UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JESSICA BARRILLEAUX,

    Plaintiff,

    v.

MENDOCINO COUNTY, et al.,

    Defendants.

Case No. 14-cv-01373-TEH

**ORDER GRANTING IN PART AND DENYING IN PART COURT DEFENDANTS' MOTION TO DISMISS**

This matter came before the Court on June 23, 2014, on Court Defendants' motion to dismiss. After considering the parties' arguments and the papers submitted, the Court now GRANTS IN PART and DENIES IN PART Court Defendants' motion for the reasons discussed below.

**BACKGROUND**

Before the incident in question, Plaintiff Jessica Barrilleaux ("Plaintiff") alleges that she walked with difficulty and occasionally used crutches due to a fractured and weakened knee. Complaint ("Compl.") ¶ 10. On April 16, 2013, Plaintiff, assisted by the use of crutches, went to the Mendocino County Superior Courthouse (the "Courthouse") to address a traffic citation. Compl. ¶ 12. The Clerk of Court calendared Plaintiff for an appearance on April 23, 2013, at Department G. *Id.* Department G is located on the fourth floor of the Courthouse and there is no elevator access to that floor. *Id.* Upon information and belief, the Clerk was aware that Plaintiff was on crutches, and knew there was no elevator access to the fourth floor, but did not warn or advise Plaintiff of that fact, nor was Plaintiff notified by any other means. *Id.*

On April 23, 2013, Plaintiff arrived at the Courthouse for her appearance without crutches or other aid. Compl. ¶ 13. Once there, she realized there was no elevator access to the fourth floor where she needed to appear. Compl. ¶¶ 14-15. Plaintiff could not

ascend stairs due to her knee, but was able to descend stairs with difficulty, if necessary, so she took the elevator to the fifth floor and descended the stairs down to the fourth floor. Compl. ¶¶ 13-14.  After appearing in court, Plaintiff was told to pay a fine on the first floor.  Compl. ¶ 15.  Again, as there was no elevator access, Plaintiff attempted to descend the stairs.  *Id.*  While descending, she fell, and tumbled to the bottom of the stairs.  *Id.*  Plaintiff was transported to the hospital by ambulance and treated for a left knee fracture.  Compl. ¶¶ 15-16.  As a result of the incident, Plaintiff claims she has suffered physical, mental, and emotional injuries.  Compl. ¶ 16.

Based on the above, Plaintiff filed suit on March 25, 2014 against Mendocino County; the Mendocino County Superior Court; the State of California[1]; and the Judicial Council of California/Administrative Office of the Courts (the "Defendants").  She alleges six causes of action: (1) violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*; (2) violation of Section 504 of the Rehabilitation Act, 29 U.S.C. § 701 *et seq*; (3) discrimination on the basis of disability in violation of California Civil Code §§ 54, 54.1, 54(c), 54.1(d), and 55, and California Government Code § 4450 *et seq*; (4) discrimination on the basis of disability in programs or activities funded by the state, in violation of California Government Code § 11135; (5) maintaining public property in a dangerous condition; and (6) negligence.  Plaintiff seeks monetary damages and injunctive relief in the form of requiring Defendants to make the Courthouse's facilities usable and accessible to persons with disabilities, to provide alternative accessible facilities, and to provide notice that the fourth floor is not accessible.

The Mendocino County Superior Court and the Judicial Council of California/Administrative Office of the Courts (the "Court Defendants") move to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of

---

[1]  Although included in the caption, the State of California has not appeared in this case.  At the hearing, Plaintiff's counsel stated that he did not believe the State of California was a proper defendant in this case and therefore the State was not served as a defendant.

2

1  Civil Procedure[2], arguing that they are immune from suit on all of Plaintiff's six causes of
2  action due to the Eleventh Amendment.  They also move to dismiss Plaintiff's state law
3  claims against the Mendocino County Superior Court under Rule 12(b)(6), because
4  Plaintiff failed to timely comply with California's Tort Claims Act which requires that any
5  claim seeking damages from a public entity must be presented to that entity within six
6  months of claim accrual.  Finally, Court Defendants also move to dismiss each of
7  Plaintiff's six causes of action, pursuant to Rule 12(b)(6), on the grounds that they fail to
8  state a claim for relief.

**LEGAL STANDARD**

**A. Lack of Subject Matter Jurisdiction**

Rule 12(b)(1) provides for dismissal for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Court Defendants here mount a "facial" challenge to Plaintiff's subject matter jurisdiction, meaning that the allegations contained in the complaint, taken as true, are insufficient on their face to invoke federal jurisdiction.  *Safe Air v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**B. Failure to State a Claim Upon which Relief Can be Granted**

Rule 12(b)(6) requires dismissal when a plaintiff's allegations fail "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

---

[2]  All references to "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

1	In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

# DISCUSSION

## A.    Eleventh Amendment Immunity

Pursuant to Rule 12(b)(1), Court Defendants move to dismiss all of Plaintiff's claims against them for lack of subject matter jurisdiction, on the grounds that the Eleventh Amendment bars suits against states by citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). By operation of the Eleventh Amendment, federal courts are generally barred from deciding a case for money damages in which an "arm of the state" is a defendant. *See Regents of the Univ. of California v. Doe*, 519 U.S. 425, 429 (1997) ("When the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit . . . .") Court Defendants assert that because they are arms of the state, they are immune from suit under the Eleventh Amendment.

Plaintiff does not dispute that Court Defendants are arms of the state. With respect to her first cause of action, however, she argues that Court Defendants' Eleventh Amendment immunity is abrogated by Title II of the ADA, and therefore she may pursue her Title II ADA claims against Court Defendants even if they are arms of the state. In *Tennessee v. Lane*, the Supreme Court held that in enacting Title II, Congress had validly abrogated the Eleventh Amendment, insofar as Title II is applied to cases implicating the right of access to the courts. 541 U.S. 509, 533-34 (2004). In *United States v. Georgia*, the Court extended *Lane*'s reasoning to hold that Eleventh Amendment immunity is abrogated by Title II anytime the conduct underlying a Title II claim also constitutes a constitutional violation. 546 U.S. 151, 159 (2006).

4

Nevertheless, Court Defendants assert that Plaintiff has not alleged a specific constitutional violation in her complaint to satisfy *Georgia*, and therefore the Eleventh Amendment is not abrogated. In *Lane*, however, the Court ruled that access to the courts is a fundamental right under the Due Process clause of the Fourteenth Amendment. 541 U.S. at 523 (holding that paraplegic's Title II claim abrogated Eleventh Amendment immunity because it was premised on a denial of court access). Neither *Lane* nor *Georgia* require that a constitutional violation be separately enunciated, just that the "Title II claims [be] evidently based, at least in large part, on conduct that independently violate[s] the constitution." *Georgia*, 546 U.S. at 157. Court Defendants' reliance on this Court's ruling in *E.H. v. Brentwood Union Sch. Dist.*, No. C13-3243 TEH, 2013 WL 5978008, at *5-6 (N.D. Cal. Nov. 4, 2013) to require otherwise is misplaced. In *Brentwood*, the Court held that the Eleventh Amendment had not been abrogated because the alleged facts underlying the plaintiff's Title II claims had failed to state a claim under the Constitution. *Id.* at *5. Finding that the plaintiff failed to allege the elements necessary for a claim under the Fourth Amendment, the Court also dismissed plaintiff's Title II claim based on Eleventh Amendment immunity, but permitted leave to amend in the event the plaintiff could bring a valid constitutional claim. *Id.* at *5-6. As Plaintiff here has alleged that she has been denied access to the Mendocino County Superior Court, *see* Compl. ¶ 22, according to *Lane*, she has alleged a violation of a due process right and Court Defendants' Eleventh Amendment immunity is therefore validly abrogated. *See Lane*, 541 U.S. at 523. Accordingly, Court Defendants' motion to dismiss Plaintiff's Title II ADA cause of action for lack of subject matter jurisdiction due to Eleventh Amendment immunity is DENIED.

Plaintiff's Rehabilitation Act claim against Court Defendants is also not barred by the Eleventh Amendment. In *Douglas v. California Dep't of Youth Auth.*, 271 F.3d 812, 820, *amended by*, 271 F.3d 910 (9th Cir. 2001), the Court reiterated its earlier holding from *Clark v. State of California*, 123 F.3d 1267, 1271 (9th Cir.1997), that if states accept federal Rehabilitation Act funds, they are subject to suit in federal court under the Rehabilitation Act, and their Eleventh Amendment immunity is waived. Finding that

California accepts Rehabilitation Act funds, the Court in *Douglas* held that California is not immune from suit based on the Eleventh Amendment. 271 F.3d at 820. At the hearing, Counsel for Court Defendants argued that *Douglas* does not apply to all California state entities, but rather, that the Court must look at whether the particular entity receives federal funds. Counsel for Court Defendants cited to no authority to support their position – a position that runs counter to the case law's declaration that "*states*, by accepting federal funds, waive[] any Eleventh Amendment immunity" they might possess. *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir. 2003) (emphasis added); *see also Yocom v. Grounds*, No. C 11-5741 SBA (PR), 2012 WL 2254221, at *5 (N.D. Cal. June 14, 2012) (holding that a Rehabilitation Act claim against the California Department of Corrections and Rehabilitation was not barred by the Eleventh Amendment because the State of California accepts Rehabilitation Act funds). Finding no authority that supports Court Defendants' position, the Court concludes that because the State of California accepts federal Rehabilitation Act funds, Court Defendants' Eleventh Amendment immunity is waived. Accordingly, Court Defendants' motion to dismiss Plaintiff's Rehabilitation Act cause of action based on Eleventh Amendment immunity is DENIED.

With respect to Plaintiff's four state law causes of action, Court Defendants argue, and Plaintiff concedes, that the Eleventh Amendment bars federal courts from hearing state law causes of actions against state entities. Pl. Opp at 26; *see Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006). Nevertheless, Plaintiff requests that she be permitted leave to amend her complaint to "name the officers of state court defendants in their individual capacities."[3] Pls. Opp. at 17-18. In *Ashker v. California Dep't. of Corrections,* 112 F.3d 392, 394-5 (9th Cir. 1997), the Court held that the Eleventh Amendment does not bar federal suits against state officials sued in their personal

---

[3] Plaintiff sought leave to amend her complaint to name these officers "under the Young doctrine" referring to *Ex Parte Young*, 209 U.S. 123 (1908). The *Ex Parte Young* doctrine, however, "allows prospective relief against state officers only to vindicate rights under *federal* law." *Spoklie v. Montana*, 411 F.3d 1051, 1061 (9th Cir. 2005) (emphasis added). It has no bearing on whether a plaintiff may sue state court officials in their individual capacities for state law violations.

capacities for violations of state law.

Although leave to amend should be freely granted, *see* Fed. R. Civ. P. 15(a)(2), leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal. *See Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). When asked at the hearing what kind of personal capacity claims Plaintiff could allege if given leave to amend, Plaintiff's Counsel stated that Plaintiff would allege that "the head of each office, the [individual] that had the responsibility for setting policy" violated state law by, *inter alia*, failing to provide accessible facilities. Motion to Dismiss Hr'g Tr. 10, June 23, 2014. Such claims, however, would be official capacity claims, not personal capacity claims, and official capacity state law claims may not be maintained against state officers in federal court. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1983).

Whether a claim is an official capacity claim or a personal capacity claim depends on whether the true target of the action is the state, or state policies, or an individual's conduct. *See Air Transport Ass'n of America v. Public Utilities Comm'n*, 833 F.2d 200, 204 (9th Cir. 1987) (holding that claims against California Public Utilities Commissioners were official capacity claims barred by the Eleventh Amendment because the relief sought – the repeal of regulations – impacted the state and not the commission members as individuals). Here, changing institutional policy impacts the Court Defendants, the state entities – not the individual officers. Thus, the claims that Plaintiff's counsel said she would allege would be official capacity claims; and any amendment to include such claims would be futile. Accordingly, Court Defendants' motion to dismiss all four of Plaintiff's state law causes of action is GRANTED, and because Plaintiff cannot cure the deficiency through amendment, the dismissal is WITH PREJUDICE.

**B.   Sufficiency of Plaintiff's Claims**

Court Defendants argue that all of Plaintiff's causes of action fail to state a claim for relief under Rule 12(b)(6). Because the Court lacks subject matter jurisdiction over Plaintiff's state law claims, it may not evaluate the sufficiency of those claims. For the

7

same reason, the Court also declines to consider Court Defendants' particular argument that Plaintiff may not maintain any state law claims against the Mendocino County Superior Court, because she has not sufficiently complied with California's Tort Claims Act. The Court instead considers only the sufficiency of Plaintiff's remaining claims: her Title II ADA and Rehabilitation Act causes of action.

"To prove a public program or service violates Title II of the ADA, a plaintiff must show: (1) he is a 'qualified individual with a disability'; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Weinreich v. Los Angeles Cnty. Metro. Transp. Auth,*, 114 F.3d 976, 978 (9th Cir. 1997) (emphasis omitted) (quoting 42 U.S.C. § 12132). "Similarly, the [Rehabilitation Act] provides: 'No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.'" *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (quoting 29 U.S.C. § 794(a)).

Turning to the first prong of both acts, a "disability" is an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(A). A limitation in a major life activity includes impairment in the ability to walk. 42 U.S.C. § 12102(2). To satisfy that first prong, Plaintiff alleges that on April 16, 2013, before the incident in question, she was "using crutches due to her mobility impairment after knee surgery." Compl. ¶10. Plaintiff alleges that her impairment was also present on April 23, 2013, and that she was able to walk, but with "some pain and difficulty." Compl. ¶ 13. Court Defendants nevertheless argue that "by virtue of [Plaintiff's injury probably] being a fracture, presumably it will mend." Motion to Dismiss ("Mot.") at 7. Therefore, they contend, Plaintiff's condition is temporary and is "generally not considered a disability." *Id.*

The Court, however, is not to presume facts against the Plaintiff on a motion to

dismiss. Moreover, Congress instructed in the Americans with Disabilities Act Amendments Act of 2008 that the "definition of disability [under the ADA] shall be construed in favor of broad coverage." 42 U.S.C. § 12102(4)(A); *see also* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553. An "expansive definition [of impairment] surely includes broken bones and torn tendons." *Summers v. Altarum Institute*, 740 F.3d 325, 332 (4th Cir. 2014) (holding that the plaintiff had alleged a disability by stating that "his accident left him unable to walk for seven months and that without surgery, pain medication, and physical therapy, he 'likely' would have been unable to walk for far longer."). Although further discovery may reveal that Plaintiff is not a qualified disabled person, she has stated a claim for relief because she has alleged that she required crutches to walk or otherwise walks with difficulties due to a weakened knee, which reflects a substantial impairment in the major life activity of walking.

With respect to the second prong of both the Title II ADA and Rehabilitation Act causes of action, Court Defendants claim that Plaintiff's allegation of exclusion from any program, service or activity is not facially plausible because she was "able to attend her hearing on April 23, 2013, and only fell on her way to the clerk's office." Mot. at 8. However, the "language of the ADA itself . . . outlaws discrimination based on disability 'in the full and equal enjoyment of the goods, services, [and] facilities' . . . and does not limit its antidiscrimination mandate to barriers that completely prohibit access." *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 n.4 (9th Cir. 2008) (quoting 42 U.S.C. § 12182(a)). That Plaintiff was able to make her way to her court appearance, and only subsequently fell on her way down from the courtroom, does not mean that the court facilities were fully and equally available to her. Plaintiff's inability to exit the courtroom safely and make her way to the Clerk's office is at least a partial barrier to her access to the court facilities. *See K.M. ex rel. Bright v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1097 (9th Cir. 2013) ("Title II and its implementing regulations, taken together, require public entities to take steps towards making existing services not just accessible, but *equally* accessible . . . .").

To satisfy the final prong of the ADA and the Rehabilitation Act, a plaintiff must

show that she was discriminated against solely by reason of her disability. *Weinreich*, 114 F.3d at 978. Court Defendants argue that Plaintiff has not alleged this because she does not allege that anyone at the Courthouse was even aware of her disability such that they could have discriminated against her by reason of her disability. Plaintiff, however, does allege that a Clerk of the Mendocino County Superior Court was "aware" Plaintiff was disabled. Compl. ¶12. The Clerk calendared Plaintiff's appearance on the fourth floor despite Plaintiff's appearing at the Clerk's office on crutches and the Clerk "knowing" that there was no elevator service to the fourth floor. In *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004), the Court held that plaintiff had satisfied the "by reason of his disability" prong merely by alleging that defendant city's enforcement of an otherwise neutral policy was unduly burdensome on him because of his disability. As Plaintiff alleges that she was unable to access the court facilities by virtue of her disability, the Court holds that Plaintiff has stated a claim with respect to this prong.

Court Defendants also contend that Plaintiff has no standing to sue for injunctive relief under the ADA and the Rehabilitation Act because Plaintiff must demonstrate "a sufficient likelihood of future harm to establish standing to sue for an injunction," *Chapman v. Pier 1 Imports (U.S.), Inc.*, 631 F.3d 939, 948 (9th Cir. 2011), and there are no facts to support her claim she will return to the Mendocino County Superior Court. Mot. at 11. Court Defendants also argue that it is implausible that a fractured knee in April of 2013 is enough to assert standing to pursue injunctive relief *now*, more than a year later. *Id.*; Reply at 2-3.

In ruling on a motion to dismiss for want of standing, the court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party. *Lema v. Courtyard Marriott Merced*, 873 F. Supp. 2d 1264, 1267 (E.D. Cal. 2012) (citing *Warth v. Seldin*, 422 U.S. 490, 501-02 (1975). "A party invoking federal jurisdiction has the burden of establishing that it has satisfied the 'case-or-controversy' requirement of Article III of the Constitution [and] standing is a 'core component' of that requirement." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992). "To satisfy Article III's case or controversy requirement, [a plaintiff] needs to show that he has suffered an injury in fact, that the injury is traceable to the challenged action of [the defendant], and that the injury can be redressed by a favorable decision." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1081 (9th Cir. 2004). To seek injunctive relief, a plaintiff must also demonstrate "a real and immediate threat of repeated injury" in the future. *Id.* It is this particular element that Court Defendants challenge here.

In *Chapman*, the Ninth Circuit explained that an ADA plaintiff may demonstrate sufficient likelihood of future harm in two ways: (1) she intends to return to a noncompliant place of public accommodation where she will likely suffer repeated injury; or (2) she is deterred from visiting a noncompliant public accommodation because she has encountered barriers related to her disability there. 631 F.3d at 949. Court Defendants argue that Plaintiff's bare assertion "that she intends to return to the facility" is not enough to state a claim that she is likely to return. Mot. at 10. Court Defendants' argument is unavailing because to establish future harm, Plaintiff is not limited to alleging that she *intends to* return – she may allege that she is *deterred* from returning due to specific barriers that she has encountered. To that end, in her Complaint, Plaintiff alleges that she "has a need to, and wishes to return to and use the facilities complained of herein, and is deterred from use of these facilities until they are made accessible." Compl. ¶ 30. More importantly, she explains how she has been, and continues to be deterred from using the Courthouse in connection with filing her petition for leave to file a late government claim. Compl. ¶ 10. As Plaintiff has already been deterred, "the possibility of h[er] injury recurring cannot be said to be so remote as to preclude standing." *Fortyune*, 364 F.3d at 1079; *see Pickern v. Holiday Quality Foods Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002) (holding that plaintiff's statement that he would shop at defendant market if it were accessible was sufficient to establish imminent injury for standing purposes); *see also Molski v. Arby's Huntington Beach*, 359 F. Supp. 2d 938, 947 (C.D. Cal. 2005) (finding plaintiff's allegation that "he would and will return to Arby's if it is made accessible to persons with disabilities . . . clearly satisf[ies] [plaintiff's] burden of alleging actual or

11

1   imminent injury for purposes of standing."). Additionally, with respect to Court
2   Defendants' argument that Plaintiff's 2013 injury no longer afflicts her, the Court may not
3   construe the Complaint against the Plaintiff and assume that her weakened knee has
4   healed. The Court thus concludes that Plaintiff sufficiently alleges standing to sue for
5   injunctive relief under Title II of the ADA.

6   Court Defendants also challenge the sufficiency of Plaintiff's federal claims by
7   arguing that she failed to allege facts that support a finding of intentional discrimination or
8   deliberate indifference, as required to pursue monetary damages under the ADA and the
9   Rehabilitation Act. *See Duvall v. County of Kitsap*, 260 F.3d 1124, 1139 (9th Cir. 2001).
10  Deliberate indifference requires (1) "knowledge that a harm to a federally protected right is
11  substantially likely" and (2) "a failure to act upon that likelihood." *Id.* In *Duvall*, the
12  Ninth Circuit held that "where the need for accommodation is obvious or required by
13  statute or regulation . . . the public entity is on notice that an accommodation is required,
14  and the plaintiff has satisfied the first element of the deliberate indifference test." *Id.* As
15  the need for accommodation is obvious where the plaintiff was on crutches the day her
16  appearance was calendared, and certain floors are only accessible by stairs, the first
17  element is satisfied. *See Wilkins-Jones v. County of Alameda*, No. C 08-1485 MHP, 2010
18  WL 4780291, at *6 (N.D. Cal. Nov. 16, 2010) (noting that the plaintiff raised a triable
19  issue as to the first prong where she "had at least some noticeable and significant
20  difficulties with mobility in the presence" of defendant's staff).

21  Under the second prong of the deliberate indifference test, a failure to act must be
22  the result of deliberateness and not merely conduct that is negligent or the result of
23  bureaucratic slippage. *Duvall*, 260 F.3d at 139. Here, Plaintiff alleges that the Clerk was
24  "aware" of her crutches and therefore of her walking impairment, and exhibited deliberate
25  indifference by scheduling her for an appearance on an inaccessible floor and not notifying
26  her. In *Duvall*, the Court upheld a denial of summary judgment where the plaintiff had
27  raised a triable issue as to whether defendants "had notice of his need for accommodation"
28  but failed to take action. *Id*. at 1140. Applying that guidance to the present motion to

12

dismiss, the Court holds that Plaintiff's allegations that the Clerk was aware but failed to make any accommodation is sufficient to at least state a claim for deliberate indifference. In sum, because Plaintiff has pleaded that she is a qualified individual with a disability, that she has encountered barriers to her full and equal access to the Courthouse, that Defendants were aware of Plaintiff's disability, and that she is deterred from returning to the Courthouse as a result, Court Defendants' motion to dismiss Plaintiff's Title II ADA and Rehabilitation Act claims for failure to state a claim are DENIED.

**CONCLUSION**

The Court DENIES Court Defendants' motion to dismiss for lack of subject matter jurisdiction based on Eleventh Amendment immunity as to Plaintiff's Title II ADA and Section 504 Rehabilitation Act claims (First and Second Causes of Action); however, the Court GRANTS the motion WITH PREJUDICE as to her state law claims (Third through Sixth Causes of Action),

The Court DENIES Court Defendants' motion to dismiss Plaintiff's ADA and Rehabilitation Act claims (First and Second Causes of Action) for failure to state a claim.

**IT IS SO ORDERED.**

Dated: 7/25/14

_____
THELTON E. HENDERSON
United States District Judge